In the

# United States Court of Appeals
### For the Seventh Circuit

Nos. 08-1423, 08-2017

DAMODARBHAI PATEL,

*Petitioner*,

*v.*

ERIC H. HOLDER, JR., Attorney General
of the United States,

*Respondent.*

Petition for Review of an Order
of the Board of Immigration Appeals.
No. A73-219-452

ARGUED JANUARY 28, 2009—DECIDED APRIL 24, 2009[*]
PUBLISHED MAY 1, 2009

Before BAUER, RIPPLE, and TINDER, *Circuit Judges.*

TINDER, *Circuit Judge.* An immigration judge ordered
Damordabhai Patel removed in absentia after he failed to
appear at a 2001 hearing. Patel twice moved to reopen,

---

[*] This opinion was initially released in typescript.

claiming that he never received notice of the hearing because the Immigration and Naturalization Service mailed the notice to the wrong address. The immigration judge denied the motions, and the BIA affirmed. Patel appeals, but because he challenges only the BIA's discretionary decision to deny reopening, we dismiss his petition for lack of jurisdiction.

## Background

Patel, who is a citizen of India, entered the United States without permission in 1994 and applied for asylum that same year. In 1998, the INS attempted to set a hearing on his asylum claim by mailing a notice to appear to his last known address, in Blue Springs, Missouri. When Patel notified the INS that he had changed his address, the INS sent a second notice via certified mail to his new home in New York. Someone (precisely who is disputed) signed the return receipt with Patel's surname, though the first name on the receipt is illegible.

In November 2000, the INS mailed a third notice to appear to Patel's New York address, informing him that a hearing had been scheduled for March 2, 2001. This notice was returned as "undeliverable." Patel did not appear at the hearing and so the IJ ordered him removed in absentia. The order of removal, mailed to his New York address, was also returned as undeliverable.

In the meantime, Patel had moved to Chicago, where, in 2007, immigration officials found and detained him. Patel, aided by Attorney Mazher Shah Khan, promptly

moved to reopen the removal proceedings, arguing that he never received the notice to appear. According to Patel, he had moved to Chicago in 1998 and in early 1999 had written to the INS to report his new mailing address. In support of this claim, Patel submitted only a photocopied envelope addressed to the INS and bearing a postage stamp of January 5, 1999. The government responded that the envelope was a fake: its postage stamp was printed using Khan's stamp meter, which hadn't been installed until 2001. The government also argued that Patel had received at least the second notice to appear, since someone had signed the return receipt with his last name.

The IJ denied the motion, finding that Patel actually received the notice to appear at his New York address. Although one page of the IJ's decision is missing from the administrative record, it is clear that the IJ was unpersuaded by Patel's explanation that another person with the last name of Patel must have signed the return receipt. Even if Patel himself had not signed the return receipt, the IJ continued, the notice was sent shortly after Patel's move to Chicago and would likely have been forwarded to his new address. Moreover, the IJ observed that Patel was required to provide immigration authorities with his current address, and the only evidence that he had done so—the photocopied envelope—was fraudulent. The IJ therefore concluded that Patel had failed to meet his burden of proof and that "the evidence he has submitted likely is fraudulent and therefore not worthy of belief."

Patel, with new counsel, appealed to the Board of Immigration Appeals. The BIA rejected Patel's arguments, noting that he had provided nothing beyond the fraudulent envelope in support of his claim that he had informed the government of his move to Chicago before the notice was mailed.

The next day, Patel filed a second motion to reconsider and reopen with the BIA. In support of this motion, he claimed that the New York address used by the INS did not match his real New York address and that he never filed a change-of-address form with the postal service when he moved to Chicago. He also submitted an affidavit from the New York property's owner, who asserted that Patel did not live there at the time the notice was signed for. Finally, Patel contended that Khan was ineffective because he had fabricated the envelope that purportedly showed Patel had given immigration authorities his Chicago address. Patel insisted that he had no knowledge of the fake envelope because he was in detention at the time Khan submitted it to the IJ. He acknowledged, however, that while in detention he had signed an affidavit confirming that he had mailed a change-of-address form in the fake envelope.

The BIA denied Patel's second motion as well. The BIA discounted the property-owner's affidavit, since there was no proof that the affiant actually owned the New York property. Moreover, the BIA noted that the affidavit reported that the New York property was vacant from 1997 to 2000, contradicting Patel's claim that he lived there until December, 1998. And the BIA observed

that the affidavit in which Patel swore that he had mailed the suspect envelope belied his claim that he had no idea it was fabricated. The BIA therefore concluded that Patel had failed to identify any error in its first decision and had not provided any new evidence material to his case.

## Analysis

On appeal, Patel challenges the denial of his motions to reopen. Although the government does not press the argument, we may reach the merits of Patel's case only if we have jurisdiction over his petition for review. We do not. Claims of abuse of discretion in deciding motions to reopen are outside our jurisdiction. *See Huang v. Mukasey*, 534 F.3d 618, 620 (7th Cir. 2008); *Kucana v. Mukasey*, 533 F.3d 534, 535-37 (7th Cir. 2008). Instead, only constitutional claims and questions of law are reviewable on appeal. *See* 8 U.S.C. § 1252(a)(2)(D); *Huang*, 534 F.3d at 620. Legal questions include challenges to the BIA's interpretation of a statute, regulation, or constitutional provision, claims that the BIA misread its own precedent or applied the wrong legal standard, or claims that the BIA failed to exercise discretion at all. *Adebowale v. Mukasey*, 546 F.3d 893, 896 (7th Cir. 2008). At issue, then, is whether either of Patel's two challenges to the BIA's decision (addressed below) presents a constitutional claim or question of law.

Patel first contends that the BIA erred in concluding that he received actual notice of the hearing date, placing too much weight on the certified mail receipt signed

"Patel." This argument does not present a constitutional claim, since due process does not require that the alien "actually receive" notice of removal proceedings, but only that the government attempt to deliver notice to the last address provided by the alien. *Joshi v. Ashcroft*, 389 F.3d 732, 735 (7th Cir. 2004). Although Patel's brief suggests at one point that the New York address used by the INS differed from the one that he provided for the purpose of proper service, Patel does not develop that claim into a due process challenge. Instead, his brief repeatedly states that the issue in this case is whether he "actually received" notice. Given Patel's failure to develop a due process argument based on lack of sufficient notice, he has not presented a "colorable" constitutional claim. *Zamora-Mallari v. Mukasey*, 514 F.3d 679, 696 (7th Cir. 2008).

Patel's notice argument also does not present a question of law, since actual receipt is a question of fact that weighs into the BIA's discretionary decision to reopen an order of removal. *Derezinski v. Mukasey*, 516 F.3d 619, 621-22 (7th Cir. 2008). Rather, the BIA's weighing of the evidence to conclude that Patel was not entitled to reopening based on lack of notice involves a discretionary decision that lies outside our jurisdiction. *See Kucana*, 533 F.3d at 537 (concluding that a challenge to the BIA's determination that the petitioner's country conditions had not worsened to the extent of justifying reopening was non-reviewable); *Zamora-Mallari,* 514 F.3d at 696 (finding no constitutional claim in the petitioner's argument that the BIA gave insufficient weight to his life circumstances).

But even if we had jurisdiction, Patel's claim would fail. He was required to keep the government apprised of his current address—that is why the fraudulent envelope purporting to change his address was crucial to his case. *See* 8 U.S.C. § 1305(a); *Derezinski*, 516 F.3d at 621. The government therefore had no reason to believe that Patel lived anywhere other than at the New York address. As this court has observed, "a certified mailing to an address known to be current will ordinarily discharge the government's duty of notice." *Id.*

Patel next contends that, in assessing his second motion to reopen, the BIA erred in concluding that he knew of and was involved in Khan's falsification of the change-of-address envelope. This argument also fails to raise a constitutional claim or question of law and therefore lies outside our jurisdiction. *See Jezierski v. Mukasey*, 543 F.3d 886, 890 (7th Cir. 2008) (holding that we lacked jurisdiction to review BIA's conclusion that lawyer was not ineffective in failing to submit a brief to the BIA). Patel argues only that the BIA improperly relied on his signed affidavit attesting to the validity of the fake envelope because that affidavit, like the envelope, was prepared by Khan while Patel was in detention. But this is, again, a quarrel with the weight the BIA placed on the affidavit. Patel does not point to any rule of law that required the BIA to ignore the affidavit, nor is there any. The BIA's conclusion that Patel participated in his lawyer's fraud is therefore beyond our review. *Jezierski*, 543 F.3d at 890; *see also Huang*, 534 F.3d at 620; *Kucana*, 533 F.3d at 535-37.

DISMISSED.

RIPPLE, *Circuit Judge*, concurring.  I concur in the judgment of the court because it is consonant with the precedent of this circuit and therefore constitutes the applicable rule of decision under the doctrines of stare decisis and precedent. I write separately to suggest, respectfully, that, as our court strays more and more from the view of the majority of circuits and from the view of the agency charged with the administration of the statute on an important question threatening the even-handed application of the immigration law, the time has come for higher appellate authority to determine whether the rest of the Nation now should follow our view or whether we should re-join the rest of the Nation. *See* Supreme Court Rule 10.

The central issue in this case is the interpretation of the "door-closing" provision in 8 U.S.C. § 1252(a)(2)(B)(ii). That section provides that:

> no court shall have jurisdiction to review any decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security, other than the granting of relief under section 1158(a) of this title.[1]

This circuit initially took the position that section 1252(a)(2)(B)(ii)'s jurisdictional bar applied to challenges

---

[1]  Section 1158(a) pertains to asylum relief; it is not implicated in this case because the IJ never made a decision about Mr. Patel's eligibility for asylum.

of discretionary decisions only when the IJ was exercising discretion that had been granted by statute; we did not apply the door-closing provision to bar jurisdiction over exercises of discretion conferred only by regulation. *See Singh v. Gonzales*, 404 F.3d 1024, 1026-27 (7th Cir. 2005) (holding that section 1252(a)(2)(B)(ii) did not bar review of an IJ's denial of a motion to reopen immigration proceedings).

We since have reversed course, however, beginning with our decision in *Ali v. Gonzales*, 502 F.3d 659 (7th Cir. 2007). In *Ali*, the petitioner sought review of an IJ's decision to deny his motion to continue his removal proceedings, which he had sought so that he could pursue adjustment of his immigration status. The petitioner argued that the door-closing provision did not divest us of jurisdiction because, by its terms, that provision precluded review only of decisions or actions that are committed to the Attorney General's discretion by "this subsection" of the statute: that is, 8 U.S.C. §§ 1151-1381. The immigration statute makes no mention of motions to continue; the IJ's discretion to grant a continuance arises not from the statute but from a regulation, 8 C.F.R. § 1003.29. The petition argued that, therefore, the door-closing provision does not apply to review of an IJ's decision to deny a motion to continue. Although the Government agreed with the petitioner's position, we nevertheless rejected it. We reasoned that, although the *discretion* to grant or deny a continuance was not conferred by statute, the *authority* to do so stemmed from 8 U.S.C. § 1229a, which "confers upon immigration judges the authority to conduct removal proceedings." *Ali*, 502

F.3d at 660. Without explicitly overruling *Singh,* we concluded that this statutory nexus was sufficient to trigger the door-closing provision. We reached this conclusion in light of 8 U.S.C. § 1252(a)(2)(B)(i), which provides that the IJ's final determination on an application for adjustment of status is unreviewable by the courts: "Adjustment of status determinations are unreviewable under § 1252(a)(2)(B)(i); the IJ's continuance determination is interim to Ali's contemplated adjustment of status application, and interim orders entered along the road to an unreviewable final order are themselves unreviewable." *Ali*, 502 F.3d at 661.[2] In subsequent cases, we have extended our holding in *Ali* to bar review of not only motions to continue, but also motions to reopen. *See Huang v. Mukasey*, 534 F.3d 618, 620-21 (7th Cir. 2008); *Kucana v. Mukasey*, 533 F.3d 534, 536-39 (7th Cir. 2008);[3] *Jezierski v. Mukasey*, 543 F.3d 886 (7th Cir. 2008).

---

[2] One might question whether this reasoning has any force in the context of asylum proceedings, final decisions about which *are* subject to judicial review. *See Kucana v. Mukasey*, 533 F.3d 534 (7th Cir. 2008) (Cudahy, J., dissenting). Nevertheless, we subsequently have held that the door-closing provision applies with equal force to discretionary decisions made during asylum proceedings. *See Huang v. Mukasey*, 534 F.3d 618, 620-21 (7th Cir. 2008) (holding that section 1252(a)(2)(b)(ii) bars review of an IJ's denial of a motion to reopen asylum proceedings); *Kucana*, 533 F.3d at 536-39 (same).

[3] In *Kucana*, we finally did overrule *Singh* explicitly, in part because we recognized that its holding was "not tenable" after our decision in *Ali*. *Kucana*, 533 F.3d at 537-38.

Our broad interpretation of section 1252(a)(2)(B)(ii)'s scope puts us on the distinct minority side of an intercircuit split over the applicability of the door-closing provision to claims challenging the exercise of discretion granted by regulation rather than by statute. The Eighth and Tenth Circuits have reached the same conclusion that we have in the context of a denial of a continuance. *See Yerkovich v. Ashcroft*, 381 F.3d 990, 995 (10th Cir. 2004); *Onyinkwa v. Ashcroft*, 376 F.3d 797, 799 (8th Cir. 2004). Every other circuit, as well as the Attorney General, has reached the opposite conclusion: that section 1252(a)(2)(B)(ii) only bars review of decisions made in the exercise of discretion conferred by statute—specifically 8 U.S.C. §§ 1151-1381. *See Lendo v. Gonzales*, 493 F.3d 439, 441 n.1 (4th Cir. 2007); *Alsamhouri v. Gonzales*, 484 F.3d 117, 122 (1st Cir. 2007); *Zafar v. Att'y Gen.*, 461 F.3d 1357, 1360-62 (11th Cir. 2006); *Khan v. Att'y Gen.*, 448 F.3d 226, 232-33 (3d Cir. 2006); *Ahmed v. Gonzales*, 447 F.3d 433, 436-37 (5th Cir. 2006); *Sanusi v. Gonzales*, 445 F.3d 193, 198-99 (2d Cir. 2006); *Abu-Khaliel v. Gonzales*, 436 F.3d 627, 633-34 (6th Cir. 2006); *Medina-Morales v. Ashcroft*, 371 F.3d 520, 528-29 (9th Cir. 2004). The majority of circuits read section 1252(a)(2)(B)(ii) to bar review only where both the authority and the discretion to make the decision were granted by statute. Hence, these eight circuits, and the Attorney General, have concluded that the courts do have the authority to review decisions on motions to continue and motions to reopen, because the discretion to grant or deny them is conferred not by statute but by regulation.

Notably, *no* other circuit has determined, as we did in *Kucana*, that section 1252(a)(2)(B)(ii) is a bar to our review of the denial of a motion to reopen in an asylum case where the decision affects the alien's right to review of substantive decisions of the Board of Immigration Appeals that are based on a mistake or misunderstanding of the factual basis of a claim—decisions that the Supreme Court has analogized to motions under Rule 60 of the Federal Rules of Civil Procedure. *See Stone v. INS*, 514 U.S. 386, 401 (1995); *see also Kucana*, 533 F.3d 534, 539-40 (Ripple, J., concurring *dubitante*). In fact, even the Tenth Circuit, which agrees with us that motions to continue are not reviewable, has drawn the line at motions to reopen. *See Ntiri v. Gonzales*, 227 Fed. Appx. 749, 752 (10th Cir. 2007) ("We have jurisdiction to review the denial of a motion to reopen, at least where judicial review of the underlying order is not precluded." (citing *Infanzon v. Ashcroft*, 386 F.3d 1359, 1361-62 (10th Cir. 2004))).

The immigration laws of the United States should be administered even-handedly across the entire Nation. No attribute of sovereignty rests in a federal circuit to go its own way and subject individuals to treatment different from what they would receive from the United States Government in any other part of the Country. This principle is especially true in areas such as immigration and asylum law where decisions of the administrative process affect so drastically the course of the human lives impacted by the decision. I respectfully suggest that the holdings of *Ali* and its progeny should be re-examined before their dominion is spread even further afield.

Turning briefly to the facts of this case, I believe that Mr. Patel preserved his due process claim, which we have jurisdiction to hear because it is a constitutional claim. 8 U.S.C. § 1252(a)(2)(D); *see also Jezierski*, 543 F.3d at 890 (noting that a claim alleging insufficient notice in violation of due process would be reviewable by this court). However, because the IJ determined, as a matter of fact, that the Government had in fact sent the notice to the address supplied by Mr. Patel and since there was sufficient evidence to support that determination, I do not believe that this contention can survive the deferential review that we owe the IJ on such a fact-bound conclusion.[4] Accordingly, I would deny Mr. Patel's

---

[4]  Among other things, the IJ noted that Mr. Patel admitted in his first motion to reopen that he lived at "4 Wedgewood Lane, Miller Place, Long Island City, NY 11764, until December 31, 1998." A.R. 135. This was the address to which the notice was sent. This admission contradicts Mr. Patel's argument before the BIA and before this court that he never lived in Long Island City. The IJ also found that a return receipt for the notice was signed by someone with the surname Patel.

As for Mr. Patel's claim that he submitted a change-of-address form to the INS when he moved to Chicago in 1999, the IJ's decision to disbelieve it is also supported by substantial evidence. The only proof that Mr. Patel provided to show that he submitted the form was his own affidavit and a photocopy of a postmarked envelope, which he later admitted was forged. The IJ acted reasonably in finding that Mr. Patel had fabricated this claim.

In short, the evidence in the record supports the IJ's finding that proper notice was mailed to the last address that Mr. Patel

(continued...)

petition on the merits rather than dismiss it for lack of jurisdiction.

---

[4] (...continued)

provided. This is all that due process requires. *Joshi v. Ashcroft*, 389 F.3d 732, 736 (7th Cir. 2004).

---